DeAnne Casperson, Esq. (ISB No. 6698)
dcasperson@workandwage.com
Amanda E. Ulrich, Esq. (ISB No. 7986)
aulrich@workandwage.com
Ryan S. Dustin, Esq. (ISB No. 8683)
rdustin@workandwage.com
CASPERSON ULRICH DUSTIN PLLC
356 W. Sunnyside Rd., Suite B
Idaho Falls, ID 83402
Telephone: (208) 524-0566
Facsimile: (208) 745-2523

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANGELA BRADLEY,<br><br>　　　　　　Plaintiff,<br>v.<br><br>AUTOZONERS, LLC, a Nevada limited liability company,<br><br>　　　　　　Defendant. | Case No. _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Filing Fee: $400.00 |

Plaintiff, Angela Bradley, by and through her counsel of record, Casperson Ulrich Dustin PLLC, and as a cause of action against Defendant Autozoners, LLC, a Nevada limited liability company, complains and alleges as follows:

**JURISDICTION AND VENUE**

1. This is an action brought under the Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000, *et seq.*; the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq.*; and the common law of the State of Idaho.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

1 –   COMPLAINT AND DEMAND FOR JURY TRIAL

3. Venue in this action properly lies in the United States District Court for the District of Idaho, Eastern Division, pursuant to 28 U.S.C. § 1391(b) because the claims arose, in this judicial district; and venue also properly lies in this district pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices were committed in this judicial district.

## PARTIES

4. Plaintiff Angela Bradley ("Plaintiff") is a female citizen and resident of the United States of America, who resides in Bannock County, Idaho.

5. Defendant Autozoners, LLC ("Defendant"), a Nevada limited liability company, doing business in Bannock County, Idaho.

6. At all times relevant to this Complaint, Defendant regularly employed fifteen or more persons whose services were performed in the State of Idaho and was engaged in an industry affecting commerce. Consequently, Defendant's conduct is properly regulated by Idaho Code § 67-5901, *et seq.*; and 42 U.S.C. § 2000e, *et seq.*

## FACTS COMMON TO ALL COUNTS

7. Plaintiff realleges and incorporates by reference paragraphs 1 through 6 as though fully set forth herein.

8. Plaintiff began working for Defendant at its north Pocatello, Idaho location in or around February 2016. Plaintiff became the Parts/Sales manager that same month.

9. Plaintiff had positive performance reviews and feedback on her handling of her job duties. Plaintiff had some point infractions for attendance due to an anxiety disorder and/or situations outside her control.

10. On or about September 5, 2018, Plaintiff received a First Written Warning for accidentally leaving the safe unlocked, which Plaintiff acknowledged was her error.

11. In or around the fall of 2018, Defendant hired Tim Hancock ("Hancock") as a the new manager for Defendant's north Pocatello store.

12. Shortly after Hancock began working as the manager for Defendant's north Pocatello store, he began making offensive, sexual comments to Plaintiff.

13. One on occasion, while Plaintiff was standing on her tip-toes, reaching up to the top shelf to right some bottles that had fallen over, Hancock stood outside of the office watching Plaintiff, and repeatedly kept telling her to "reach." This made Plaintiff very uncomfortable.

14. On another occasion, Hancock told Plaintiff that if she were to ever get out of hand he would "do this" to Plaintiff, and when he said "do this" he gestured by lifting both hands in front of Plaintiff's breasts and twisting his hands, indicating that he would twist the nipples of her breasts.

15. On another occasion, Plaintiff and Hancock were discussing a slow day in the store. Plaintiff stated that "sometimes it explodes at night," meaning that toward the end of the day it can get really busy. Hancock asked Plaintiff to repeat what she just said with a funny look on his face. Plaintiff didn't understand, and again said, "sometimes it explodes at night." Hancock then started laughing and Plaintiff realized he thought what she said could be interpreted sexually. Plaintiff was embarrassed and humiliated.

16. On or about November 8, 2018, Hancock brought some donut holes to work to share, and asked Plaintiff if she wanted some. Plaintiff took a couple and thanked Hancock. As Plaintiff was eating the donut holes, Hancock said, "Do you like having my balls in your mouth?"

17. That same day, Plaintiff was up on a ladder in the office retrieving an item. Hancock walked into the office while Plaintiff was up on the ladder, looked at Plaintiff, and got a strange

3 –   COMPLAINT AND DEMAND FOR JURY TRIAL

smile on his face. Plaintiff asked him why he was smiling. He told Plaintiff his "mind was in the gutter." Again, this made Plaintiff very uncomfortable.

18. Hancock would also comment on female customers coming into the store, and would say he was going to help certain female customers because they were pretty.

19. Hancock also used the word "c*nt" to refer to female customers after they had left the store when he was upset about the interaction he had with them.

20. Hancock also followed Plaintiff up a ladder while she was working. He got very close to Plaintiff, and Plaintiff felt trapped because Hancock was blocking Plaintiff from climbing down the ladder. There was no reason for Hancock to climb the ladder while Plaintiff was on it.

21. Hancock also asked Plaintiff to watch a video on his phone, which was a sex scene in a bathroom from the movie Step Brothers. Plaintiff was very uncomfortable and offended to have to watch the video with him, but because he was Plaintiff's supervisor, she did not know what to do and felt she had no choice.

22. On or about November 16, 2018, Plaintiff told the District Manager, German Hernandez ("Hernandez"), what Hancock had been doing and that she was very offended by his behavior. Plaintiff explained that she struggled with anxiety and that Hancock's behavior was causing her significant stress and anxiety.

23. Hernandez directed Plaintiff to provide him with a written statement regarding the statements and actions Hancock had taken. Plaintiff prepared the statement and provided it to Hernandez.

24. On or about November 28, 2018, Hancock gave Plaintiff a Second Written Warning for leaving for lunch a little late because of her job duties and calling in sick. Plaintiff felt the write up was direct retaliation for her report of Hancock's behavior.

25. On or about November 29, 2018, Hernandez and HR Representative Cory Boothe ("Boothe") came to Pocatello to meet with Plaintiff. Plaintiff asked if they could meet at a location different than the north Pocatello store managed by Hancock because she was concerned about Hancock further retaliating against her.

26. The location was moved to Defendant's south Pocatello store. However, the meeting was held in the back of the store, and there was no privacy. Plaintiff was still very concerned that she would be retaliated against for making the report because there was no privacy or confidentiality in the south Pocatello store.

27. Though HR and Hernandez told Plaintiff they would conduct an investigation and get back to her, Plaintiff heard nothing further from HR or Hernandez regarding the investigation or its outcome.

28. After Plaintiff made her first report to Hernandez, Hancock was very cool towards her. Additionally, Hancock's behavior did not change. Hancock again called a female customer a "c*nt" and described another female employee looking to transfer to another store as "not bad to look at" as part of her qualifications.

29. On or about April 6, 2019, Plaintiff was given a disciplinary action for asking one of the employees she supervised to cover her shift so she could leave approximately 30 minutes early. Plaintiff was given this write-up even though she, as the Parts/Sales Manager, had been allowed to modify her shift if she had coverage. The other employee would not have been in overtime and was already present for work.

30. Unbeknownst to Plaintiff, Hancock was also submitting memos to the file, criticizing her alleged performance. Hancock submitted memos to the file on January 30, 2019; May 1, 2019; May 23, 2019; and May 27, 2019.

31. Hancock failed to discuss any of the alleged performance concerns in his secret memos t the file with Plaintiff, but recommended to Hernandez that Plaintiff be fired.

32. Hancock wrote Plaintiff up for not getting permission from him even though it had never been required in the past and it was his day off.

33. On or about May 16, 2019, Hernandez met with Plaintiff and pressured her to step down from her management role. Hernandez insisted Plaintiff was one write up away from being fired. Plaintiff refused to step down and felt like Hernandez was pressuring and threatening her in an effort to get her to quit.

34. On or about June 5, 2019, Hancock terminated Plaintiff's employment. When Plaintiff asked why she was being fired, Hancock told Plaintiff it was because she refused to step down and that she was not a team player, but provided no explanation as to how Plaintiff was not a "team player."

35. On or about October 12, 2019, Plaintiff dually filed a Charge of Discrimination with the Idaho Human Rights Commission ("IHRC") and Equal Employment Opportunity Commission ("EEOC").

36. On or about April 28, 2020, Plaintiff received her Notice of Right to Sue.

37. Plaintiff has exhausted her administrative remedies.

## COUNT ONE
## VIOLATION OF TITLE VII/IHRA
### (Sexual Harassment/Hostile Work Environment)

38. Plaintiff realleges and incorporates by reference their respective paragraphs 1 through 37 as though fully set forth herein.

39. Plaintiff is female and therefore belongs to a protected class under Title VII of the Civil Rights Act and the Idaho Human Rights Act.

40. Plaintiff was subjected to sexual comments and actions by Hancock.

41. Hancock's conduct was unwelcome.

42. Hancock's conduct was based upon Plaintiff's sex.

43. Hancock's conduct was so severe or pervasive as to alter the terms and conditions of Plaintiff's employment and create a sexually abusive and hostile work environment.

44. Plaintiff perceived the working environment to be abusive, hostile, and/or offensive.

45. A reasonable woman in Plaintiff's circumstances would consider the working environment to be abusive, hostile, and/or offensive.

46. Plaintiff suffered tangible employment actions such as being written up, threatened with termination, and ultimately, being terminated, as a result of not acquiescing to or approving of Hancock's behavior.

47. As a direct and proximate result of Defendant's actions and/or failures to act, Plaintiff has suffered, and will continue to suffer, emotional distress, consisting of outrage, shock, and humiliation, reasonably occurring and likely to occur based on the sexual harassment and hostile work environment she experienced. Plaintiff is therefore entitled to general and compensatory damages, in an amount to be proven at trial, as well as any other equitable remedies available to her.

48. Defendant's conduct was willful or done with a reckless disregard for Plaintiff's federally protected rights, for which Plaintiff is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(a).

## COUNT TWO
## VIOLATION OF TITLE VII/IHRA
### (Retaliation)

49. Plaintiff realleges and incorporates by reference paragraphs 1 through 48 as though fully set forth herein.

50. Plaintiff engaged in a protected activity under Title VII and the Idaho Human Rights Act when she reported Hancock's sexual harassment and the hostile work environment to Defendant's upper management and HR.

51. Plaintiff was subjected to adverse employment actions as a result of her protected activity.

52. Defendant discriminated against Plaintiff and/or retaliated against Plaintiff due to her engaging in protected activity.

53. As a direct and proximate result of Defendant's actions and/or failures to act, Plaintiff has suffered, and will continue to suffer, emotional distress, consisting of outrage, shock, and humiliation, reasonably occurring and likely to occur based on the sexual harassment and hostile work environment she experienced. Plaintiff is therefore entitled to general and compensatory damages, in an amount to be proven at trial, as well as any other equitable remedies available to her.

54. Defendant's conduct was willful or done with a reckless disregard for Plaintiff's federally protected rights, for which Plaintiff is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(a).

## ATTORNEY'S FEES

55. As a further direct and proximate result of Defendant's actions and/or failure to act, Plaintiff has been compelled to retain the services of counsel, and have incurred and will continue to incur costs and attorney's fees. Plaintiff is therefore entitled to attorney's fees and costs incurred in pursuing this action pursuant to 42 U.S.C. § 1981(b), 42 U.S.C. § 2000e-5(k), and Idaho Code § 12-120(3).

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury as to all issues triable to a jury in this action.

## PRAYER FOR RELIEF

Plaintiff seeks the judgment of the Court against Defendant as follows:

1. For general and compensatory damages, and all other statutorily available damages, in an amount to be proven at trial;

2. For any equitable remedies available to her;

3. For punitive damages;

4. For statutorily available costs and attorney's fees;

5. For prejudgment interest on all amounts claimed; and

6. For such other and further relief as the Court deems just and proper.

DATED this 6th day of July, 2020.

/s/
DeAnne Casperson, Esq.
CASPERSON ULRICH DUSTIN PLLC

C:\Users\Dana\Casperson Ulrich Dustin PLLC\Casperson Ulrich Dustin PLLC Team Site - Documents\Active Cases\Bradley, Angela\Pleadings\Complaint.wpd:dg